FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2013 AUG 21 A 11: 24

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| SCOTT A. ELLIOTT, MING-HANG HO and THE ROXANA H. CUPPLES REVOCABLE INTER VIVOS TRUST, <br><br> *Plaintiffs*, <br><br> v. <br><br> MISSION TRUST SERVICES, LLC, **Signatory Trustee** <br> Serve: Christopher C. Finlay, Manager <br> 410 Pine Street, SE, Suite 100 <br> Vienna, VA 22180 <br><br> CHRISTOPHER C. FINLAY, in his capacity as Manager of Mission Trust Services, LLC, <br> Serve: Christopher C. Finlay, Manager <br> 410 Pine Street, SE, Suite 100 <br> Vienna, VA 22180 <br><br> THE CORPORATION TRUST COMPANY, **As Delaware Trustee** <br> Serve: 1209 Orange Street <br> Wilmington, DE 19801 <br><br> MICHAEL T. HOSMER, **As Independent Trustee** <br> Serve: SDE Independent Director, LLC <br> 11121 Carmel Commons Blvd., Suite 250 <br> Charlotte, NC 28226 <br><br> *Defendants*. | Civil Action No. 1:13cv1036 <br> LO/TRJ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Scott Elliott, Ming-Hang Ho, and the Roxana H. Cupples Revocable Inter Vivos Trust, as individual plaintiffs, by and through their undersigned attorneys, for their claims against defendant Mission Trust Services, LLC, Signatory Trustee, defendant Christopher C. Finlay, Manager of Mission Trust Services, LLC, and nominal defendants The Corporation

Trust Company, Delaware Trustee, and nominal defendant Michael T. Hosmer, Independent Trustee, state as follows:

## THE PARTIES

1.  Plaintiff Scott A. Elliott currently owns, and at all relevant times owned, beneficial interests in Mission Millbrook, DST, a Delaware Statutory Trust. Mr. Elliott is a United States citizen who maintains his primary residence in Mexico and resides presently in California. At the time of his purchase of the beneficial interest in Mission Millbrook, DST, Mr. Elliott was a citizen of Arizona.

2.  Plaintiff Ming-Hang Ho currently owns, and at all relevant times owned, beneficial interests in Mission Millbrook, DST, a Delaware Statutory Trust. Mr. Ho is a resident of California.

3.  Plaintiff Roxana H. Cupples Revocable Inter Vivos Trust currently owns, and at all relevant times owned, a beneficial interest in Mission Millbrook, DST, a Delaware Statutory Trust. Roxana H. Cupples, Trustee of the Roxana H. Cupples Revocable Inter Vivos Trust, is a citizen of Nevada.

4.  Defendant Mission Trust Services, LLC ("Mission Trust Services"), is a Delaware Limited Liability Company with its principal place of business in Vienna, Virginia. The sole member of Mission Trust Services is Mission Residential, LLC, a Virginia limited liability company with a principal place of business in Vienna, Virginia. Finlay Partners, LLC ("Finlay Partners"), is the sole member of Mission Residential and maintains its principle offices in Vienna and Oakton, Virginia. Forward Capital, LLC (:Forward Capital") is a Delaware limited liability company with principal offices in Oakton, Virginia. . The members of Forward Capital

are Christopher C. Finlay and David A. Wieland. Finlay is a Virginia resident and Wieland is a Texas resident. Finlay is the Manager of Mission Trust Services.

5. Defendant Christopher C. Finlay, sued in his capacity as Manager of Mission Trust Services, is a citizen of Virginia and operates his businesses, including Mission Trust Services, from offices in Vienna and his personal residence in Oakton, Virginia.

6. Nominal defendant The Corporation Trust Company, sued in its capacity as Delaware Trustee, is a Delaware Corporation with principle offices in Wilmington, Delaware. The Corporation Trust Company is the Delaware Trustee of the Mission Millbrook, DST.

7. Nominal defendant Michael T. Hosmer, sued in his capacity as Independent Trustee, is a citizen of and maintains an office in Charlotte, North Carolina. Mr. Hosmer is the Independent Trustee of the Mission Millbrook, DST.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C.§ 1332, as each of the Plaintiffs and each of the Defendants are citizens of different states and the matter in controversy exceeds $75,000.00 exclusive of interest, attorneys' fees, and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and because Mission Millbrook, DST is subject to personal jurisdiction in the judicial district in which this Court sits.

## FACTS GIVING RISE TO THE COMPLAINT

10. This declaratory judgment action involves review and construction of a Delaware Statutory Trust Agreement and enforcement of particular contractual terms and duties of the Signatory Trustee in light of the Trust's default under a $19,000,000 commercial loan and

substantial risk that the Plaintiffs will lose entirely their significant investment and suffer potentially adverse tax consequences if the lender pursues foreclosure and/or enforces other rights and remedies.

11. In general terms, a Delaware Statutory Trust is an unincorporated association created by a governing Trust Agreement under which property is held, managed, administered, and operated by a signatory trustee for the benefit of those persons entitled to a beneficial interest in the property (*i.e.*, investors such as Plaintiffs).

12. Delaware Statutory Trusts are structured to allow investors to qualify for deferral of federal and state income taxes on capital gains. Under terms of applicable Revenue Rulings, a trustee of a Delaware Statutory Trust may retain only limited authority. Generally, the following structure is put in place to comport with applicable tax law. A master lease is created for the property. A master tenant enters into leases of the property with residential or commercial subtenants. The master tenant enters into a contract with a management agent for the property and such management agent, usually an affiliate, is responsible for managing and operating the Property. The master tenant, or its agent, is free to sign leases with the various individual tenants in the apartment communities without violating applicable Revenue Rulings. The master lease provides for rent to be paid by the master tenant to the Delaware Statutory Trust. Beneficiaries of the Delaware Statutory Trust receive distributions of rent for their investment return.

13. An additional feature of a Delaware Statutory Trust is the option to include in a Trust Agreement the right and obligation of conversion of the Delaware Statutory Trust into a limited liability company (often called a "Springing LLC") with a lender approved operating agreement. Delaware law and applicable tax laws permit this conversion. While Delaware Statutory Trusts organized for 1031 tax deferral prohibit accepting capital from investors or

4

soliciting new investors except as in the initial capitalization, the operating agreement of a Springing LLC does not contain prohibitions against raising additional funds for investment into the property. A primary purpose of the Springing LLC is to provide a means to infuse capital into the property; it is a remedy in the Loan and Trust documents designed to protect the Lender and Investors should the DST be threatened with insolvency or actually become insolvent.

14. The trust entity involved in this case, Mission Millbrook, DST, is a Delaware Statutory Trust created and operated by defendant Christopher C. Finlay ("Finlay"), sued in his capacity as Manager of Mission Trust Services. Mr. Finlay is a businessman who resides and operates his various businesses out of the Vienna, Virginia area. In addition to Mission Trust Services, Finlay's entities include Mission Residential, LLC ("Mission Residential"), Mission Residential Holdings, LLC ("Mission Holdings"), Mission Management, LLC ("Mission Management"), and Middleburg Capital. The various Mission entities operated by Finlay are in the business of sponsoring the syndication of tax deferred investments in multifamily apartment communities and thereafter managing and operating the apartment communities. Finlay's company, defendant Mission Trust Services, is the Signatory Trustee for Mission Millbrook, DST.

15. In July 2007, Mission Residential sponsored an offering and issued a Private Placement Memorandum in which it set forth the intent of Mission Millbrook, DST to purchase the Mission Millbrook Apartments, a 368 unit apartment community in Raleigh, North Carolina, for $24,750,000.00. Pursuant to the Private Placement Memorandum, Mission Residential sought to raise $10,250,000.00 by selling beneficial interests in Mission Millbrook, DST to qualified investors who would become the beneficiaries of the Mission Millbrook, DST. A genuine copy of the Private Placement Memorandum is attached as **Exhibit A.**

16. Each of the Plaintiffs responded to the Private Placement Memorandum and invested in the Mission Millbrook, DST. By virtue of their investment, Plaintiffs became beneficiaries of the Trust Agreement of Mission Millbrook, DST, a Delaware Statutory Trust dated August 16, 2007 ("Trust Agreement"). A genuine copy of the Trust Agreement, containing the signatures of Plaintiffs, other Investors, and Finlay, signing as Manager for Mission Trust Services, is attached as **Exhibit B.** The Trust Agreement contains an operative provision allowing and requiring the creation of a Springing LLC, provided that the operating agreement of the limited liability company is "substantially similar in form to the LLC operating agreement set forth as Exhibit C" to the Trust Agreement. Trust Agreement § 9.03(b). The form LLC operating agreement attached as Exhibit C to the Trust Agreement was also included in the Private Placement Memorandum, which Plaintiffs relied upon when they invested in Mission Millbrook, DST. A genuine copy of the Mission Millbrook LLC operating agreement, the form of which was agreed to by Mission Trust Services and the Plaintiffs at the time of their investment, is attached hereto as **Exhibit C.**

17. Once Millbrook Residential secured the requisite investors and investor funding, Mission Millbrook, DST obtained a loan for $19,000,000.00, which constituted the balance of the capital required for the purchase transaction to close (the "Loan"). The Loan is secured by the Mission Millbrook Apartments (the "Trust Property").

18. The Loan is memorialized by a Promissory Note executed by Mission Millbrook, DST as Maker (by Mission Trust Services as Signatory Trustee), dated August 16, 2007, in the original principal sum of $19,000,000.00 (the "Note"). A genuine copy of the Note is attached as **Exhibit D.** Repayment of the Note is secured by, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated August 16, 2007 (the

"Deed of Trust") from the Trust, as Grantor, to Chicago Title Insurance Company, as Trustee for the benefit of Deutsche Bank Mortgage Capital, L.L.C. (the "Lender"). A genuine copy of the Deed of Trust is attached as **Exhibit E.** Both the Note and the Deed of Trust were executed on behalf of Mission Millbrook, DST by defendant Mission Trust Services in its capacity as Signatory Trustee of the Trust.

19. At or about the time the Loan was procured and the purchase of Millbrook Apartments consummated, Mission Millbrook, DST entered into a master lease ("Millbrook Master Lease") with Millbrook LeaseCo, LLC ("Millbrook LeaseCo"), another Finlay controlled entity. A genuine copy of the Millbrook Master Lease, as amended, is attached as **Exhibit F.** Millbrook LeaseCo serves as Master Tenant with respect to the Trust Property. During the term of the Millbrook Master Lease, Millbrook LeaseCo is responsible for all costs of managing and operating the Millbrook Apartments.

20. As the Signatory Trustee of a Delaware Statutory Trust by virtue of the Trust Agreement, Mission Trust Services' duties are defined by statute, common law, and contract. Mission Trust Services' statutory duties with respect to the Mission Millbrook, DST are described in the Delaware Statutory Trust Act, as codified. *See* Del. Code Ann. Tit. 12, § 3801, *et. seq.* Additionally, as Signatory Trustee, Mission Trust Services owes various common law duties to the Trust, including the implied covenant of good faith and fair dealing which, by Delaware statute, cannot be abrogated or waived. *See id.* at § 3806 ("the governing instrument may not eliminate the implied contractual covenant of good faith and fair dealing.") Moreover, as Signatory Trustee, Mission Trust Services owed various contractual duties to the Mission Millbrook, DST including but not limited to a duty to preserve and protect the property of the Trust for the beneficiaries. *See* Trust Agreement § 2.04 ("The Trustees hereby declare that they

will hold the Trust Property upon the terms and conditions herein for the benefit of Investors, . . . "); *see also* § 6.04.

21. Importantly, Section 6.04 of the Trust Agreement provides:

<u>Authority of Trustees.</u> The Trustees shall manage, control, dispose of or otherwise deal with Trust Property consistent with their duties to conserve and protect the Trust Property, subject to any restrictions required by the Loan Documents, or otherwise provided in this Trust Agreement.

22. Section 7.01(e) of the Trust Agreement provides:

The Signatory Trustee has also been appointed hereunder to satisfy such legal or administrative requirements as may be necessary or prudent to carry out the duties of the Trust with respect to the Loan Documents and other Transaction Documents or any Trust Property to the extent that the Delaware Trustee is not required to do so under applicable law.

23. Section 7.03 of the Trust Agreement sets forth various "Prohibited Actions" that the Signatory Trustee is precluded expressly from taking:

<u>Prohibited Actions.</u> Notwithstanding any other provision in this Trust Agreement, the Trustees shall not take any of the following actions, if the effect would be that such action or actions would constitute a power under the Trust Agreement to "vary the investment of the certificate holders" as defined by Regulation Section 301.7701-4(c)(1); (a) reinvest any monies of the Trust, except in accordance with Section 4.02; (b) renegotiate the terms of the Loan, enter into new financing, renegotiate the Master Lease or enter into new leases, except in the case of the Master Tenant's bankruptcy or insolvency, (c) make other than minor non-structural modifications to the Real Estate, other than as required by law, (d) accept any capital from the Investors or new investors except as provided for in the Initial Capitalization, or (e) take any other action that would in the opinion of counsel to the Trust cause the Trust to be treated as a "business entity" for federal income tax purposes.

24. By virtue of the Trust Agreement, Mission Millbrook, DST, as Signatory Trustee, is required to terminate the Trust and convert the Trust upon the occurrence of certain events, which specifically includes default under the commercial loan and also the risk of imminent default of the mortgage. Such contractual duties are expressly memorialized in the Trust Agreement. *See* §§ 9.02 and 9.03(b).

25. In Fall 2012, Plaintiffs and other beneficiaries of Mission Millbrook, DST received from Mission Trust Services a document titled "Official Capital Call Notice – Mission Millbrook Apartments" dated October 15, 2012 ("Capital Call"). A genuine copy of the Capital Call is attached hereto as **Exhibit G**. The Capital Call stated a need to raise $720,000 to provide capital and operating funds for the Millbrook Apartments and sought to allow a capital infusion from both current Investors and new investors.

26. The Capital Call described specifically the challenges facing the Millbrook Apartments. The Capital Call recited that at the time of initial funding of the investment, the Millbrook Apartments had an occupancy rate of 93.2 percent, and monthly rental collections of $215,571. The Capital Call described a decline in property operations and occupancy rate to 78.26 percent and stated that monthly rental collections in August 2012 had fallen to $189,000 per month. The letter further stated: "The property has prioritized debt service payments over capital expenditures and some property expenses to avoid monetary loan default. As of the date of this letter, all debt service payments have been made, but the property is unable to maintain operations under the current circumstances." *See* Capital Call at 2. The Capital Call further stated that "Mission Trust Services, LLC, the Signatory Trustee of the Trust (the "Signatory Trustee"), has determined that the Property is at risk of imminent default of the mortgage without additional funding to fully pay the debt service." Capital Call at 4.

27. At or about the time they received the Capital Call, Plaintiffs and other beneficiaries became aware that the Millbrook Apartments suffered from significant distress. Certain of the beneficiaries visited the Mission Millbrook Apartments on October 26, 2012, and documented deterioration, significant deferred maintenance, and safety concerns, including the following: an unsightly dump site visible from the main road of the premises which included old

mattresses, derelict furniture, and refuse; stagnant detention ponds filled and covered with algae due to broken aeration pumps; façade work, including wood rot and peeling paint; needed roof and gutter repairs; dead trees; visible mold; and exposed electrical wiring. *See* Mission Millbrook Visit of October 26, 2012, attached as **Exhibit H.** Plaintiffs became aware at that time that the rental office for the apartments no longer opened on weekends. Further inspections of the Mission Millbrook Apartments revealed other substantial deferred maintenance conditions, showing that repairs of at least $1.6 million dollars were needed.

28. In the Capital Call, Mission Trust Services requested Investor consent to conversion of the Trust to a Springing LLC. However, the limited liability company operating agreement proposed by Mission Trust Services varied substantially from that attached as Exhibit C to the Trust Agreement which the Plaintiffs had agreed to at the time of their investment. Significantly, it set up certain classes of membership entitled to vote, and, instead of an unfettered right to remove the manager with 75 percent of the ownership interest, Mission Trust Services conditioned termination of the Trust on a limited liability company agreement which provided the Manager (Finlay's Mission Trust Services) "can only be replaced for gross negligence, willful misconduct, or fraud, and only after final adjudication." *See* Capital Call at 7-8. The Capital Call further conditioned conversion on full and complete releases by Trust beneficiaries of Mission Trust Services and other Finlay affiliates. The limited liability company agreement proposed by Mission Trust Services eliminated the possibility of removing and replacing the Manager by a simple 75 percent vote. The consequence was that Investors, unwilling to place even more assets under the control of the present Manager, would lose the ability to recapitalize their investment.

29. In or about May 2013, Plaintiffs learned that Finlay-controlled Mission Trust Services had caused Mission Millbrook, DST to default on its Loan payment obligations. Subsequent communications with counsel for Mission Trust Services and the Lender confirmed the default. To date, the Loan default has not been cured. Even if the default is cured, the Loan would return to a state of imminent default, as evidenced by the substantial deterioration and decline of the Property. Upon information and belief, the Lender is preparing to commence litigation seeking the appointment of a receiver to collect rents and commencing foreclosure proceedings against the Property.

30. On or about June 27, 2013, Plaintiffs received a Property Operations Review for the month ended 05/31/2013 for the Mission Millbrook Apartments. The Property Operations Review indicated that the occupancy rate for the Property had dropped to 62.77 percent, the rental income had declined to $152,054, the accounts payable increased to $400,778, while the cash balance was $5,150 and there was only $1 in reserves. Mission Millbrook Apartments is located in a highly favorable rental environment and its peer apartment communities are doing well.

31. The Trust Agreement states expressly what must occur in the event a default occurs under the Loan or if a default under the Loan is imminent. Under the Trust Agreement, if a default occurs under the Loan or the Loan is at risk of imminent default, "the Signatory Trustee *shall*, in compliance with such conditions precedent and other requirements as may be set forth in the Loan Documents, terminate the Trust and distribute the Trust Property to Investors in the manner provided in Section 9.03." *See* Trust Agreement at § 9.02 (emphasis added).

32. The Trust Agreement further states what must occur if the Signatory Trust fails to terminate the Trust when required to do so. Section 9.02 states the following: "If the Signatory

11

Trustee fails to terminate the Trust when required to do so pursuant to this Section 9.02 (or if the Independent Trustee is directed by Lender in writing to terminate the Trust Agreement), the duties of the Signatory Trustee described in this Section 9.02 and in Section 9.03 shall become solely the duties of the Independent Trustee and the Independent Trustee shall, in compliance with such conditions precedent and other requirements as may be set forth in the Loan Documents, terminate the Trust and distribute the Trust Property to Investors in the manner provided in Section 9.03."

33. Section 9.03 describes the manner in which the Trust Property is distributed to Investors upon termination of the Trust. Upon termination of the Trust, the Trust shall convert to a limited liability company with an operating agreement substantially similar to that attached to the Trust Agreement as Exhibit C. The LLC then acquires, by operation of law, the Trust Property, subject to whatever indebtedness the Trust incurred. The ownership interest of the Investors transfers into equivalent membership interests of the LLC. The LLC agreement provides that members holding at least 75 percent of the Membership Interests can remove a Manager provided that the prior written consent of the Lender is obtained.

34. By letter dated May 24, 2013, Plaintiffs, by counsel, made demand upon Mission Trust Services to terminate and convert the Trust to a limited liability company pursuant to Section 9.02 of the Trust Agreement (the "May 24 Demand"). *See* Letter dated May 24, 2013, attached as **Exhibit I**. To date, Mission Trust Services has refused to terminate the Trust and convert the Trust to a limited liability company with an operating agreement comporting with Exhibit C to the Trust Agreement. In fact, for several months there has been no communication from Mission Trust Services concerning the urgent matter of the default.

35. Plaintiffs have also made demand on the Lender requesting that Lender exercise its rights under Section 9.02 of the Trust Agreement to require the Independent Trustee to accomplish conversion, as is within Lender's rights under the Trust Agreement. *See* Letter dated July 26, 2013, a genuine copy of which is attached as **Exhibit J**. To date, Lender has not acted to direct the Independent Trustee to accomplish conversion.

## COUNT I – DECLARATORY JUDGMENT AND INJUNCTION

36. Paragraphs 1 through 35 are incorporated herein.

37. As Signatory Trustee, Mission Trust Services holds the Trust Property upon terms and conditions for the benefit of Plaintiffs and other Investors. *See* Trust, § 2.04. Mission Trust Services is required by the contractual language of the Trust Agreement to terminate the Trust and accomplish conversion to a LLC if a Loan default occurs.

38. It is clear from the Capital Call and communications from the Lender that the Loan is in default or in imminent default. Even if the monetary default is cured, the conversion requirements set forth in section 9.02 of the Trust Agreement have triggered.

39. To date, Mission Trust Services has refused to terminate the Trust Agreement and convert the Trust to a limited liability company in the form attached as Exhibit C as is required by the terms of the Trust Agreement.

40. Plaintiffs seek a declaratory judgment from this Court to require Mission Trust Services as Signatory Trustee to terminate the Trust and convert it pursuant to Section 3821 of the Delaware Statutory Trust Act into a Delaware limited liability company, the approved form of which is attached as Exhibit C to the Trust, without substantial variation from such format.

41. The terms of the Trust Agreement dictate and compel conversion to a limited liability company under the circumstances present here.

42. Alternatively, this Court should declare and require the Independent Trustee to terminate the Trust and distribute the Trust Property to Investors in the manner provided in Section 9.03(b), which requires conversion to a limited liability company.

43. Mission Trust Services' refusal to terminate the Trust and convert it to a limited liability company in the form attached as Exhibit C to the Trust Agreement has created an actual and justifiable controversy.

44. Without a declaratory judgment and other injunctive relief compelling termination of the trust and conversion into a limited liability company, Plaintiffs and other investors will suffer irreparable harm in terms of loss of their investment and exposure to significant tax consequences. Until the conversion to a limited liability company is accomplished, Plaintiffs have no means of investing new capital into the Property or saving their investment from foreclosure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter a judgment:

(i) declaring a default under the Loan has occurred;

(ii) declaring under the Trust Agreement, Mission Trust Services, as Signatory Trustee, is required to terminate the Trust in accordance with Sections 9.02 and 9.03 of the Trust Agreement;

(iii) declaring Mission Trust Services, as Signatory Trustee, or alternatively, the Independent Trustee, shall cause the Mission Millbrook, DST to convert to a limited liability company pursuant to, and in accordance with, Section 9.03(b) of the Trust Agreement;

(iv) declaring the limited liability company shall be in the form of LLC agreement that is attached to the Trust Agreement as Exhibit C with no substantive variations;

(v) declaring defendant Finlay, in his capacity as Manager of Mission Trust Services, or alternatively, the Independent Trustee, shall execute all documents necessary to consummate the termination of the Trust and conversion to a limited liability company in the form attached as Exhibit C to the Trust Agreement;

(vi) commanding and enjoining defendant Finlay, in his capacity as Manager of Mission Trust Services, or alternatively, the Independent Trustee, to execute all documents necessary to consummate the termination of the Trust and conversion to a limited liability company, in the form attached as Exhibit C to the Trust Agreement;

(vii) declaring in advance of the conversion to a LLC, Plaintiffs shall be permitted to communicate with Lender for the purpose of (i) obtaining its consent to conversion; and (ii) obtaining consent for the replacement of the Manager of the LLC;

(viii) declaring and decreeing that this Court shall retain jurisdiction until all conditions precedent are met and conversion is accomplished.

(ix) awarding all other just and equitable relief to which Plaintiffs may be entitled.

Dated: August 21, 2013

Respectfully submitted,

**SCOTT A. ELLIOTT, MING-HANG HO, and THE ROXANA H. CUPPLES REVOCABLE INTER VIVOS TRUST**

By: _____
Mary Catherine Zinsner, VSB No. 31397
Richard E. Hagerty, VSB No. 47673
S. Mohsin Reza, VSB No. 75347
K. Nicola Harrison, VSB No. 82194
Troutman Sanders LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, VA 22182
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mary.zinsner@troutmansanders.com
richard.hagerty@troutmansanders.com
mohsin.reza@troutmansanders.com
nicola.harrison@troutmansanders.com

*Counsel for Plaintiffs*

20581211v2